IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



TODD M. ELSNER, ET AL., §
 §
Plaintiffs, §
 §
VS. § NO. 4:11-CV-370-A
 §
THE BANK OF NEW YORK MELLON, §
F/K/A THE BANK OF NEW YORK, §
AS TRUSTEE FOR THE CERTIFICATE §
HOLDERS, CWALT, INC., §
ALTERNATIVE LOAN TRUST 2007- §
18CB MORTGAGE PASS THROUGH §
CERTIFICATES, SERIES 2007-18CB §
ET AL., §
 §
Defendants. §

MEMORANDUM OPINION
and
ORDER

The court has not been persuaded that it has subject matter jurisdiction over the above-captioned action. Therefore, the court is ordering the action remanded to the state court from which it was removed.

I.

Background

This action was initiated on May 3, 2011, in the 342nd Judicial District Court of Tarrant County, Texas, by the filing by plaintiffs, Todd M. Elsner and Sara Lynne Elsner, of their Original Petition and Application for Temporary Restraining Order

and Temporary Injunction ("petition"). Defendants, The Bank of New York Mellon, f/k/a The Bank of New York, as trustee for the Certificate Holders, CWALT, Inc., Alternative Loan Trust 2007-18CB Mortgage Pass Through Certificates, Series 2007-18CB; BAC Home Loans Servicing, LP; and Recontrust Company, removed the action to this court by notice of removal filed June 6, 2011. Defendants alleged that the court has subject matter jurisdiction because of complete diversity of citizenship between plaintiffs and defendants and an amount in controversy exceeding the sum or value of $75,000.00, exclusive of interest and costs. See 28 U.S.C. § 1332(a). Defendants acknowledged in the notice of removal that plaintiffs' petition does not seek a specific amount of monetary relief but contended that the amount in controversy nonetheless exceeds the jurisdictional amount because plaintiffs seek equitable and injunctive relief that would permanently void the foreclosure of real property with an appraisal value of $310,400.00.

Because of a concern that defendants had not provided information in the notice of removal that would enable the court to find that the amount in controversy exceeds the required amount, the court, on June 10, 2011, ordered defendants to file an amended notice of removal, together with supporting

documentation, showing that the amount in controversy exceeds the jurisdictional amount.

Defendants filed their amended notice of removal on June 17, 2011. In addition to citing legal authority standing for the proposition that the value of the property is the proper measure of the amount in controversy in an action such as this one, defendants made the following statement in support of their position that the amount in controversy exceeds the required amount:

> **B. Even If the Fair Market Value of Plaintiffs' Property Is Not the Measure of the Amount in Controversy, the Amount in Controversy Still Exceeds $75,000.00.**
>
> 7. On or about May 18, 2007, Plaintiffs purchased the real property forming the basis of this matter. In connection with their purchase of the real property, Plaintiff Todd Elsner executed a promissory note in the amount of $232,000.00 and both plaintiffs executed a deed of trust to secure Plaintiff Todd Elsner's obligations under the promissory note.
>
> 8. As of June 14, 2011, the current unpaid principal balance on Plaintiffs' mortgage is $227,560.69 and an escrow shortage of $25,070.01.
>
> 9. Given that the fair market value of Plaintiffs' property is $310,400.00, the unpaid principal balance is $227,560.69 and the is an escrow shortage of $25,070.01, even if the fair market value of Plaintiffs' property is not the correct measure of the amount in controversy, this totals $107,909.32 in controversy--clearly about the minimum amount required for diversity jurisdiction.

Defs.' Am. Notice of Removal at 3-4.

On June 27, 2011, defendants filed another document titled "Defendants' Supplemental Notice of Removal." In the supplemental notice of removal, defendants stated, in support of their position that the amount in controversy exceeds $75,000.00, that plaintiffs had recently notified defendants that plaintiffs are seeking "actual damages in the amount of $310,400.00, treble damage[s] in an unspecified amount and attorneys' fees of at least $20,000.00." Defs.' Supp. Notice of Removal at 2. As proof of their assertion, defendants attached a copy of an email exchange between their counsel and counsel for plaintiffs. In the exchange, defendants' counsel wrote to plaintiff's counsel: "If you can provide me a written demand of the amount of damages your clients are seeking, I can get the July foreclosure halted." Id., Ex. A at unnumbered first page. Plaintiffs' counsel responded: "My clients seek economic damages in the amount of $310,400.00, plus treble damages under the DTPA, plus attorney's fees of at least $20,000.00." Id., Ex. A. at unnumbered first page.

Due to the unusual nature of the contents of the supplemental notice of removal, the court held a telephone conference/hearing on June 28, 2011, with counsel for plaintiffs and counsel for defendants on the line. After having evaluated the pleadings and the information gained during the telephone

4

conference/hearing, and, after reviewing applicable legal authorities, the court remains unpersuaded that the amount in controversy in this action exceeds the required amount.

II.

Basic Principles

The court starts with a statement of basic principles announced by the Fifth Circuit:

Pursuant to 28 U.S.C. § 1441(a), a defendant or defendants may remove to federal court any state court action over which the federal district courts would have original jurisdiction. "The removing party bears the burden of showing that federal subject matter jurisdiction exists and that removal was proper." Manguno v. Prudential Prop. Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2001). "Moreover, because the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns, which mandate strict construction of the removal statute." Carpenter v. Wichita Falls Indep. Sch. Dist., 44 F.3d 362, 365-66 (5th Cir. 1995) (citation omitted). Any doubts about whether removal jurisdiction is proper must therefore be resolved against the exercise of federal jurisdiction. Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000).

To determine the amount in controversy for the purpose of establishing diversity jurisdiction, the court ordinarily looks to the plaintiff's state court petition. Manguno, 276 F.3d at 723. If it is not facially apparent from the petition that the amount in controversy is greater than $75,000.00, the removing party must set forth summary judgment-type evidence, either in the notice of removal or in an affidavit, showing by a preponderance of the evidence that the amount in controversy exceeds that amount. Id.; Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 1335 (5th Cir. 1995).

The amount in controversy is measured from the perspective of the plaintiff. Vraney v. County of Pinellas, 250 F.2d 617, 618 (5th Cir. 1958) (per curiam). In an action for declaratory or injunctive relief, the amount in controversy is the "value of the object of the litigation," or "the value of the right to be protected or the extent of the injury to be prevented." Leininger v. Leininger, 705 F.2d 727, 729 (5th Cir. 1983).

III.

The True Nature of Plaintiffs' Claims

Plaintiffs' petition does not specify a dollar amount of recovery sought, nor does it define in any way the value of the right sought to be protected or the extent of the injury sought to be prevented. As a result, the court has attempted to

evaluate the true nature of plaintiffs' claims to determine the amount actually in controversy between the parties.

The court has been aided by the following explanation given by counsel for plaintiffs during the telephone conference/hearing:

> THE COURT: Is your real goal, your client's real goal, trying to figure out how to stay in the house as long as they can?
>
> MS. BURGOYNE: Not -- my clients have certain issues with the mortgage company that we would like to have addressed.
>
> THE COURT: What kind of --
>
> MS. BURGOYNE: Apart from that, yes, he is interested in making sure that the mortgage company has crossed all their T's and dotted all their I's. And if that were to occur, he is interested in entering into some kind of long-term solution such as -- you know, such as a loan modification or something like that.
> If that is not a possibility, he does plan to pursue this all the way to trial to address the issues of the improper acts of the mortgage company.
>
> THE COURT: What acts are those?
>
> MS. BURGOYNE: Well, ultimately, Your Honor, there's -- there's several problems. One is that they have this loss mitigation department, and they are advertising themselves to be trying to help homeowners when, in fact, the reality is they are not.
> When people submit a loan modification application, the don't get a response. They are arbitrarily denied or the wrong numbers are used to calculate. Basically, these loan modifications that are being advertised do not actually exist, in my opinion, so that's one, and I call that an unconscionable act by the mortgage company, as well as a deceptive trade practice.

> The other thing is that I believe under state law that they are required to produce the original note, if they are to prove that they are the holder of the note, if the note has exchanged hands.
> And in this situation, I believe the note has exchanged hands. My client is making -- contesting who is the actual holder of the note and so, therefore, we would like defendant to produce the original so that they can prove that they are the holder of the note.
> And it's my contention if they can't produce the original to prove that they are the holder of the note, then they can't proceed and put any type of collection activities on that note.

Tr. of June 28, 2011, conference/hr'g (draft) at 8-10.

In other words, plaintiffs' object in this litigation is to (a) secure a long-term loan modification that will allow them to continue living in the property, (b) obtain a money judgment to compensate them for damages they have suffered because defendants purport to offer loan modification services but do not actually provide them, and (c) make defendants produce the original note prior to initiating any foreclosure proceedings. The court has not been provided with any information from which it can determine that the value to plaintiffs of such relief is greater than $75,000.00.

Defendants contend that the amount in controversy is equal to the appraised value of the house because plaintiffs request a permanent injunction preventing defendants from foreclosing or otherwise disturbing plaintiffs' peaceable possession of the property. The allegations of the petition and the explanation

8

provided by plaintiffs' counsel at the telephone conference/hearing make clear, however, that plaintiffs are not requesting such injunction based on a claim that they are entitled to outright ownership of the property. Rather, plaintiffs are merely requesting that defendants be prevented from foreclosing unless defendants can prove that they are the entities actually entitled to foreclose. Even if defendants are not allowed to foreclose, plaintiffs concede that their claim to the property is subject to a note and deed of trust. Thus, the value to plaintiffs of an injunction preventing defendants from foreclosing is, at most, the value of plaintiff's interest in the property, not the value of the property itself. Again, the court does not have any information suggesting that plaintiffs' interest in the property exceeds $75,000.00.[1]

Nor is the email exchange provided by defendants with their supplemental notice of removal any more probative of the amount in controversy. In the telephone conference/hearing, counsel for plaintiffs admitted that she arbitrarily chose $310,400.00 as the amount of damages she told defense counsel plaintiffs are seeking because that is the appraised value of the property. Counsel for

---

[1] In the section of their amended notice of removal quoted in section I of this memorandum opinion, defendants appear to possibly be suggesting that plaintiffs' interest in the property is $107,909.32; however, the court does not find defendants' explanation of how they arrived at such a number altogether coherent, and, in any event, counsel for plaintiffs stated during the telephone conference/hearing that her clients probably do not have any equity in the property.

plaintiffs also stated that $310,400.00 does not represent that amount of damages plaintiff's are seeking.

Thus, defendants have not proven by a preponderance of the evidence that the amount actually in controversy in this action exceeds the sum or value of $75,000, excluding interest and costs. Consequently, the court lacks subject matter jurisdiction over the action and is remanding it to the state court from which it was removed.

IV.

Order

For the reasons given above,

The court ORDERS that the above-captioned action be, and is hereby, remanded to the state court from which it was removed.

SIGNED July 6, 2011.

_____
JOHN McBRYDE
United States District Judge